**Al HANF, d/b/a The Body Shop, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–625.**

Court of Criminal Appeals of Oklahoma.

June 4, 1975.

**938**

Woodson & Gasaway, Don E. Gasaway, George P. Phillips, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant, Al Hanf, d/b/a The Body Shop, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Tulsa County for the crime of Sale of a Newspaper Showing Acts of Sexual Intercourse and/or Unnatural Copulation between persons. Punishment was assessed that defendant pay a fine of Fifteen Thousand Dollars ($15,000.00). From the judgment and sentence entered in conformance with the verdict, the defendant perfected his timely appeal to this Court.

Opinion affirming the judgment and sentence was filed herein on February 13, 1975, for failure to appellant to brief. Within the fifteen (15) day period permitted by Rule 1.6 of this Court, appellant filed Petition for Rehearing which was sustained and the previous opinion ordered vacated and withdrawn, and the Court proceeds to dispose of the appeal on its merits:

Briefly stated the facts adduced at trial are as follows: The State presented one witness, Robert A. Chance, who testified that he was employed by the Tulsa Police Department as a detective assigned to the vice squad and that on the 12th day of July, 1973, he entered an adult book store known as The Body Shop in Tulsa and purchased from the defendant a copy of "Screw Magazine". The magazine was admitted into evidence and submitted to the jury for examination. The State then rested.

The defendant called eight witnesses who testified that the publication did not offend them and that numerous persons in the community were not offended by sexually explicit material and that many others saw no reason why such material should not be made available to those who wish to purchase it. Numerous sexually explicit books sold to the public at local bookstores were introduced into evidence by the defense. Testimony was also presented that such sexually explicit material, such as the popular *The Joy of Sex* and *The Picture Book of Sexual Love,* amounted to a material percentage of gross sales in local retail bookstores and that many volumes were sold in the Tulsa area.

█ The defendant's first proposition in error urges that 21 O.S.1971 § 1040.51 under which the information was filed, trial conducted and judgment and conviction rendered, was, at the time of the filing of said information, unconstitutional in light of the rulings of the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, and its companion cases. The defendant further urges that the retroactive application of the Miller standards to the defendant in

the instant case violates the constitutional ex post facto law proscription and that this Court's authoritative construction of Section 1040.51 in State v. Combs, Okl.Cr., 536 P.2d 1301, was an unconstitutional usurpation of the legislative function.

All of the above arguments are answered in the negative by this Court in its recent decisions of Hess, et al. v. State, Okl.Cr., 536 P.2d 362 and Combs v. State, Okl.Cr., 536 P.2d 373. See also Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L. Ed.2d 590 (1974) and Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498.

■■ The defendant's next proposition urges that the trial court committed reversible error in failing to suppress introduction of the material because no adversary proceeding to make a preliminary determination of and focus searchingly on the issues of obscenity as required by Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745, was held prior to issuance of a warrant for the arrest of the defendant. We disagree. In both *Combs,* supra, cases and in Cherokee News & Arcade, Inc. v. State, Okl.Cr., 533 P.2d 624, this Court specifically held that a prior adversary hearing is not required when allegedly obscene material is obtained by purchase and no seizure is involved.

■■ The defendant next contends that the burden of proof was improperly placed on the defendant to prove his innocence rather than upon the State to prove his guilt, arguing that the only evidence of obscenity submitted by the State was the magazine itself. It is not a mandatory prerequisite to establish a prima facie case that the State present witnesses to establish the existence of the Miller standards. The introduction of the material and submission of same to the jury is sufficient. McCrary v. State, Okl.Cr., 533 P.2d 629, and Combs v. State, Okl.Cr., 536 P.2d 373.

■ Defendant further argues that Instruction No. 6 given by the trial court placed the burden of proving non-obscenity on the defendant. Instruction No. 6 is as follows:

"You are further instructed that the laws of the State of Oklahoma do not prohibit the sale of such material meeting the following standards:

"1. Pursuant to medical prescription or for use in any recognized school of medicine or veterinary science for education purpose.

"2. If the average person, applying contemporary community standards, would not find that the material, taken as a whole, appeals to one's prurient interest.

"A. In applying contemporary community standards the material's impact on an average person must be determined, not the impact on a particularly susceptible or sensitive person, or, indeed, a totally insensitive one.

"B. Prurient is defined by Funk & Wagnalls dictionary as: 1. Impure in thought and desire; lewd. 2. Having lustful cravings or desires. 3. Longing, desirous.

"3. If the depiction, otherwise prohibited by the State Law, of sexual conduct, it not so depicted in a patently offensive way.

"4. If the material, taken as a whole, is of literary, political, artistic or scientific value."

"If, after considering all of the evidence, whether introduced by the State or by the defendant, you find that the sale of State's Exhibit No. 1 is not prohibited by reason of falling within one of the above categories, or if you have a reasonable doubt in this regard, it is your duty to resolve this case in favor of the defendant and acquit him."

It is the opinion of the Court that Instruction No. 6, as submitted, sufficiently sets out the Miller standards. The defendant is required to make no proof. It is up to the jury to determine if the standards are satisfied.

The defendant next contends that the prosecuting attorney committed reversible

error in commenting upon the defendant's failure to take the stand to testify in his own behalf. The record reflects that in response to the following statement by defense counsel, to-wit:

"I don't know what that centerfold shows. I don't think there was a single witness of ours that didn't tell you they were operating under the assumption of what it showed. I don't know what it shows, just as I don't know what was in the defendant's mind when he sold the newspaper—I don't know."

the prosecutor made the following comment, to-wit:

"MR. FALLIS: This happened back on July 12 of 1973 and by the way, Mr. Gasaway followed that up with another interesting statement. In their honest representation to you does this man know what he sells? Now, mind you, can you picture a situation where attorneys representing a man since July 12 of 1973 until this date in history and they ask you: What happened out there?

"MR. GASAWAY: We'll object to that —

"MR. FALLIS: My God, you would think they had never talked to their client.

"MR. GASAWAY: We are going to object to that. That's not a fair comment on the evidence.

"THE COURT: The objection will be overruled.

"MR. GASAWAY: And move for a mistrial.

"THE COURT: Overruled.

"MR. FALLIS: That is incredible, isn't it? Do you know why—why don't they bring him up here? Why didn't they put him on the stand?

"MR. GASAWAY: Objection, Your Honor.

"MR. FALLIS: They tell you: We don't know what was in his mind."

"MR. GASAWAY: We object to that and ask for a mistrial and that the jury be admonished.

"THE COURT: The objection will be overruled. Counsel opened the door.

"MR. GASAWAY: Give us an exception. You can't open the door to that."

 It is our opinion that the blatant comment of the prosecutor about the defendant's failure to take the stand was not error invited by the defense counsel's statement concerning what was on the defendant's mind when he made the sale. Counsel's remark was a reasonable comment upon the State's circumstantial evidence of the defendant's guilty knowledge. It is, therefore, the opinion of this Court that the judgment and sentence appealed from must be, and the same is hereby, reversed and said cause is remanded for new trial.

BRETT, P. J., and BUSSEY, J., concur.